UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CARLOS MELO,
    Plaintiff,

v.

CITY OF SOMERVILLE,
CHIEF DAVID FALLON,
in his Official and Individual Capacity
    Defendants.

C.A. No. 1:18-cv-10786-RGS

**DEFENDANTS CITY OF SOMERVILLE AND CHIEF DAVID FALLON MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants City of Somerville ("City") and Chief David Fallon ("Chief Fallon") hereby submit this memorandum of law in support of their motion for summary judgment as to all of the Plaintiff's claims against them. This litigation arises out of the involuntary retirement of Plaintiff Carlos Melo ("Plaintiff" or "Melo") from the City of Somerville Police Department in February of 2017. In Counts 1 through 6 of the Complaint, Plaintiff alleges the City violated 42 U.S.C 12101 (the Americans with Disabilities Act or "ADA"), §504 of the Federal Rehabilitation Act, and Massachusetts General Laws c. 151B for employment actions taken in regards to Melo's employment beginning in the fall of 2015 and culminating in his involuntary retirement for accidental disability. In Count 7 of the Complaint, Plaintiff brings one claim individually against Chief Fallon alleging intentional infliction of emotional distress for actions taken in this relative time period. The Defendants in this matter vehemently maintain that they all times acted lawfully and reasonably in relation to Melo's employment with the Somerville Police Department.

The City denies there remain any genuine issues of material fact by which Plaintiff could show he is a qualified handicapped person under applicable law, or that he suffered any adverse employment action as a result of his disability. Furthermore, the City maintains that as the ample documentary evidence in the record will reveal, the City had well-documented legitimate, non-discriminatory reasons for each of its actions taken relative to Plaintiff's employment which have been countered by nothing but unsupported conclusory allegations made by Plaintiff during the course of discovery. Plaintiff also has no likelihood of showing pretext / discriminatory animus on the part of the City given these well-documented legitimate actions, and that the only individual Plaintiff alleged also had monocular vision in the Department who was not retired, does not even suffer from this medical condition and can see out of both eyes. There is also no factual evidence the City had any reason to suspect otherwise about this individual either.

Furthermore, Chief Fallon at all time acted reasonably in making employment actions relative to the Plaintiff's employment and nothing in the record shows otherwise. Plaintiff will be unable to show his actions amounted to the "extreme and outrageous" level required to prove intentional infliction of emotional distress and this claim against Chief Fallon must also fail.

As such, based on the undisputed facts in the record and all applicable law, summary judgment should enter for the City and Chief Fallon all claims against them.

## II. **STATEMENT OF UNDISPUTED FACTS**

The facts relevant to the City of Somerville's and Chief Fallon's Motion for Summary Judgment are set forth in their Local Rule 56.1 Statement of Material Facts Not in Dispute, which has been filed herewith.

### III.  ARGUMENT

    A.  **Summary Judgment Standard.**

Summary judgment is proper when "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A 'genuine issue' is one on which the evidence would allow a reasonable jury to return a verdict for the nonmoving party, and a 'material fact' is one which might affect the fact finder's determination and the outcome under the governing law. See Perez v. Lorraine Enters., Inc. 769 F. 3d 23, 29 (1st Cir. 2014).

Once the moving party has supported its motion for summary judgment, the burden shifts then to the non-moving party who cannot then rest on "mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial."  Barbour v. Dynamics Research Corp., 63 F. 3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party, *but* "conclusory allegations, improbable inferences, and unsupported speculation" will be ignored by the Court in making the determination. Prescott v. Higgins, 538 F. 3d. 32, 39 (1st Cir. 2008) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F. 2d 5, 8 (1st Cir. 1990) (emphasis added).

    B.  **LEGAL ARGUMENT.**

Count 1 through Count 6 of the Complaint, brought against the Defendant City of Somerville *only*, allege disability discrimination in violation of 42 U.S.C. 12101 the Americans with Disabilities Act ("ADA") (Counts 1 and 2), §504 of the Rehabilitation Act (Count 3), and Massachusetts General Laws c.151B (Counts 4-6). The First Circuit of the United States Court of

Appeals has noted that the statute, G.L., c. 151B "tracks the ADA in virtually all respects." Mulloy v. Acushnet Co., 460 F.3d 141 (1st Cir. 2006). Because of the similarities between the ADA and G.L. c. 151B, "[t]he Supreme Judicial Court of Massachusetts has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law." Id. citing Ward v. Massachusetts Health Research Institute, Inc., 209 F.3d at 33, n. 2 (citing Wheatley v. Am. Tel. & Tel. Co., 418 Mass. 394 (1994) ("It is our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting [Chapter 151B].")). Congress also has decided that the standards used to determine whether § 504 of the Rehabilitation Act has been violated in a complaint alleging employment discrimination shall be those same standards applied to employment discrimination actions under the ADA, see 29 U.S.C. § 794(d). Tardie v. Rehabilitation Hosp., 168 F. 3d 538, 542 (1st Cir. 1999). Accordingly, despite the fact that Plaintiff has alleged multiple counts with nearly identical claims in Counts 1-6 under G. L., c. 151B, § 4, the ADA, or §504 of the Rehabilitation Act in Counts 1-6 of the Complaint, these claims will be evaluated pursuant to the same legal standard.

To establish a prima facie case of employment discrimination on the basis of handicap, plaintiff must show the following three elements: 1) that he is a disabled individual within the meaning of the ADA, i.e., that he has "a physical or mental impairment that substantially limits one or more [] major life activities," 42 U.S.C. § 12102(2); 2) with or without reasonable accommodation he is a qualified individual capable of performing the essential functions of the job; and 3) that he suffered an adverse action because of his disability. Mulloy, 460 F. 3d at 145-146 citing Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000); See also Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).

With respect to the first element, the City acknowledges that it put Melo in for an involuntary disability retirement due to a medical condition- blindness in his left eye- which was discovered only after medical examinations in the fall of 2015. Medical professionals determined that he was unable to perform the essential functions of his job after these examinations and that there was nothing that would prove his sight in his left eye. "Disability" is defined under the ADA as: (A) having a physical or mental impairment which substantially limits one or more of an individual's major life activities; (B) having a record of such an impairment; or (C) being regarded as having such an impairment. See 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). Given the amendments to the ADA in 2008, the ADA Amendments Act of 2008, under which Plaintiffs must only now show that he was "subject to an action prohibited under the ADA because of an actual or perceived physical or mental impairment, whether or not the impairment limits a major life activity".  Hoback v. City of Chattanooga, 2012 U.S. Dist. LEXIS 124794, * 13-14 (Tenn. Dist. Ct. 2012); 42 U.S.C. § 12102(3)(A). Given this liberal standard, Defendants for purposes of this motion do not dispute Plaintiff meets the ADA definition of "disabled."

However, Plaintiff has failed to present sufficient evidence to establish that he is a qualified handicapped person or that Plaintiff suffered an adverse employment action as a result of his disability and thus has no reasonable likelihood of establishing a prima facie case. Even assuming arguendo, Plaintiff has enough to establish a prima facie case the Defendant City's ample evidence of legitimate non-discriminatory reasons refute any allegation of discriminatory animus and Plaintiff has no likelihood of proving pretext.

> **i.     Melo cannot Show He is a Qualified Handicapped Person as He Cannot Show he Meets the Job-Related Requirements of the Position of Police Officer, or That He Could Perform the Job With or Without reasonable Accommodation**

To show is he a "qualified handicapped person", Melo must show that he (1) has the requisite skill, experience, education and other job-related requirements for the position and (2) that he is capable of performing the essential functions of the position with or without reasonable accommodation." Mulloy v. Acushnet Co., 460 F.3d 141, 147 (1st Cir. 2006). To determine the essential functions or duties of a job under the ADA, and therefore a 151B claim, the Court must look to the (i.) employer's judgment; (ii.) job description; and (iii.) work experience of past incumbents and current incumbents. *Id*. In the essential functions inquiry, "[t]he fact that [*89] certain tasks associated with a particular position can be either reduced, reassigned, or reallocated . . . does not, by itself, render them non-essential to the position they were associated to in the first place." Jones v. Walgreen Co., 679 F.3d 9, 17 (1st Cir. 2012). Furthermore, even though a function may rarely occur, it does not render that function nonessential to the position in question. See Cox v. New England Tel. & Tel. Co., 414 Mass.375, 387 (affirming Superior Court decision finding that even though a function rarely occurred it "is not unforeseeable that this skill would be necessary during an emergency, or even from time to time").

The Massachusetts Supreme Judicial Court has looked to the job standards set out by the Commonwealth of Massachusetts Human Resources Division for police and fire fighters as these are likely to ensure the safety of other officers and fire fighters as well as the public as it did in Carleton v. Commonwealth, 447 Mass. 791 (2006).  "The Carleton case applies to situations where the medical and occupational experts in the relevant field have made a determination that a particular accommodation is unreasonable in light of the risks posed to public safety." McKenna v. Boston Housing Authority, (2008), 30 MDLR 27 (explaining under what circumstances the Carleton case applies).  The plaintiff in Carleton was unable to pass a hearing

test with or without his hearing aids and was deemed unfit for duty and denied employment because of the standards promulgated by the Commonwealth of Massachusetts Human Resources Division. 447 Mass. 791, 809 (2006).  He sued the City, the Commonwealth and the personnel administrator of the division alleging, inter alia, handicap discrimination under M.G.L. c. 151, §4(16). In granting summary judgment in favor of the City in Carleton the court stated,

> "In an area where public safety is paramount, we do not read § 4(16) to preclude a determination by the division (rather than by a judge or a jury) that an accommodation is not reasonable because it would impose an undue hardship on the conduct of the employer's (in this case the public's) business due to the dangerous type of work involved and the nature of the risk to public safety that would arise if the accommodation failed (leaving the fire fighter without adequate hearing function) at a critical moment in the work. This is particularly so where such a determination is based on consultations with medical and occupational experts in the field; is not the product of prejudice, stereotypes, or unfounded fear; and is ratified by the Legislature."

Carleton v. Commonwealth, 447 Mass. 791, 809-10 (2006).  Additionally, the court explained…

> "where, as here, a level of hearing acuity reflected in the hearing standard is an essential qualification for a municipal fire fighter (a determination not disputed by Carleton) and the accommodation sought (the use of hearing aids) is not a reasonable one as determined by the Legislature, Carleton has no reasonable expectation of proving that he is a qualified handicapped person. Summary judgment was therefore properly granted. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716, 575 N.E.2d 734 (1991)."

Id. at 810-11.  In order for the court to have found summary judgement not appropriate, they would have to find that there were facts in dispute as to whether the employee was a qualified handicapped person capable of performing the essential duties of their job without posing an unacceptably significant risk of serious injury to themselves or others. Gannon v. City of Boston, 476 Mass. 786, 87 (2017). The SJC in Carleton however noted that in the area of public safety, standards regarding reasonable accommodations for handicapped employees may be instituted by the Commonwealth's Division of Human Resources, and ultimately concluded a candidate for firefighter unable "to meet health and fitness requirements by operation of a standard which

rendered a certain accommodation unreasonable, had no expectation of proving that he was a qualified handicapped person within the meaning of…" G. L., c. 151B.  McLaughlin v. City of Lowell, 84 Mass. App. Ct. 45 (2013) (explaining that here are instances as in Carleton that determining what constitutes an essential duty of the job or position may fall outside the province of a judge or jury); See also Everett v. 357 Corp., 453 Mass. 585, 610 (2009) (where Plaintiff sought reinstatement to his position did not meet burden of demonstrating he was qualified handicapped person within the meaning of G. L. c. 151B because he did not comply with Federal Department of Transportation (DOT) regulations requiring a commercial truck driver to have a certificate, based on a medical examination, attesting to his physical and mental fitness to drive and a doctor's conclusion he was not "healthy to drive" rendered him presumptively unqualified).

    As in Carleton, this case deals with the essential functions of a public safety position which are set forth by the Commonwealth of Massachusetts Human Resources Division. After medical examination, with Dr. Reilly and then opthamologist Dr. Patalano in the fall of 2015, Melo was found to not meet these medical standards and be unable to perform the essential functions of the position of a police officer. As set forth in the medical records produced as exhibits attached to this motion, and facts from which are set forth in the statement of undisputed facts, Plaintiff demonstrated almost monocular vision in his left eye, and vision is critical to the safe and effective performance of many law enforcement job functions as opined by Dr. Reilly. Dr. Reilly specifically listed out the following: pursuit driving, use of firearms, ability to identify hazards, persons, evidence, vehicles, license numbers and weapons. Dr. Reilly opined that for municipal police officers, Massachusetts has minimum visual requirements for police applicants included minimum uncorrected vision Human Resources Division had set that "Category A"

medical conditions for which no accommodation can be made, include "uncorrected distance vision worse then 20/100 in either eye" and "peripheral vision of less than 70 degrees temporally and 45 degrees nasally in either eye on screening examination." After examination from an opthamologist, Dr. Reilly again determined that given those results, there was no longer anything that would improve his vision in his left eye, and he now sees nothing from his left eye. Dr. Reilly determined that given this, pursuit driving was a particular concern, and monocular vision raised safety concerns because if an emergency situation developed in which vision was compromised in the sole seeingeye, the officer would essentially be sightless. He further went on to state that it may interfere with the safe and effective performance of law enforcement functions including ability to identify hazards, persons, evidence vehicles, license numbers and weapons. In doing so, he made the determination that Melo's impairment interfered with his performing the essential job functions listed in the Massachusetts Municipal Police Officer Essential Functions: A. Patrol and incident response (operate a department vehicle at high rate of speed and D. Arrest-related activity (operate department vehicle at high rate of speed).

      The City relied on the list of essential functions issued by the Commonwealth of Massachusetts Human Resources Division. As testified to by the Chief in his deposition in this matter, these are the essential functions the City relies on and that a police officer must be able to perform to fulfill the duties of a police officer in the City of Somerville. Once Plaintiff was put in for disability retirement, upon submission of an application for involuntary disability, the decision was in the hands of the Somerville Retirement Board, a legal entity separate and apart from the City of Somerville. Pursuant to medical reports of the medical panel doctors appointed by the State Public Employment Retirement Administration Commission (PERAC) to evaluate Melo on his accidental disability application, Melo was deemed to be permanently unable to

perform the essential functions of his position. Two out of the three officers who evaluated him deemed his blindness in one eye, to be a danger to himself and others based on his visual limitation. One doctor opined that good visual fields are required to see threats from the left or right are useful in pursuit driving, and that individuals with only one functioning eye are twice as likely to experience complete blindness when debris enters the single remaining eye.

While Melo claims he has not had to engage in pursuit driving while employed by the City of Somerville, this is not a determining factor in whether this is an essential function of the job of police officer. Emergency situations can arise in which pursuit driving would be required. This being an essential function of the job is further reflected in the fact that all officers are required when they come on the job to take a course on emergency vehicle operation, which trains them to drive in emergency situations. The fact that Melo may have not had to engage in any pursuit driving during his employment, does not make this NOT an essential function of the job of a police officer. The standards set for vision are a job requirement and monocular vision has been deemed a condition for which an officer is unable to perform the essential duties of the job. There is no genuine issue of fact regarding Officer Melo's ability to meet the job-related requirements and perform the essential duties of a police officer even with reasonable accommodation. Officer Melo has not been tested in a full-duty capacity or an emergency situation and all doctors who evaluated him expressed his inability to respond safely and effectively in such situations given his monocular vision. <u>Carleton</u> and other cases before the Massachusetts Supreme Judicial Court have given substantial weight to the medical experts as well as the medical standards set forth for officers and fire fighters by HRD.

Wherefore, the Plaintiff's case should be dismissed for failure to meet the second prong of his case, of showing he is a qualified handicapped individual.

  ii. **<u>Failure to Accommodate</u>**

  To prevail on a reasonable accommodation claim, or as Plaintiff has titled these claims in his complaint, the "failure to accommodate" or "engaged in the interactive process" plaintiff must not only show that he is a disabled individual under the ADA, and was able to perform the essential functions of his job with or without reasonable accommodation as discussed above, but also that despite the City's knowledge of his disability, the City failed to offer a reasonable accommodation for the disability. <u>Calero-Cerezo v. United States DOJ</u>, 355 F.3d 6, 20 (1st Cir. 2004). Melo has the burden to demonstrate here that his requested accommodation "seemed reasonable on its face." <u>U.S. Airways, Inc. v. Barnett</u>, 535 U.S. 391, 401-02 (2002) The City's "duty to accommodate" any reasonable accommodation request however does not arise unless (at a bare minimum) the employee is able to perform the essential functions of the job with an accommodation." <u>Walgreen Co</u>., 679 F.3d 9, 14 (1st Cir. 2012) (quoting <u>DeCaro v. Hasbro, Inc</u>., 580 F.3d 55, 63 (1st Cir. 2009)) (internal quotation marks omitted). To show a reasonable accommodation is reasonable, the Plaintiff must show that the proposed accommodation would allow him to perform the essential functions of his job, and that "at least on the face of things, it is feasible for the employer under the circumstances. <u>Delgado Echevarria v. AstraZenez Pharm</u>. LP., 856 F. 3d 119 (1st. Cir. 2017) citing <u>Reed v. LePage Bakeries, Inc</u>., 244 F.3d 254, 259 (1st Cir. 2001) (other internal citations omitted). Plaintiff must show a likelihood of success with the proposed accommodation. <u>Evans v. Fed. Express Corp</u>., 133 F.3d 137, 140 (1st Cir. 1998); see also <u>Halpern v. Wake Forest Univ. Health Scis</u>., 669 F. 3d 454, 465 (4th Cir. 2012) ("[T]he indefinite duration and uncertain likelihood of success of [plaintiff]'s proposed accommodation renders it unreasonable.").

Furthermore, liability for failure to engage in an interactive process "depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." Jones v. Nationwide Life Ins. Co., 696 F. 3d 78 (1st. Cir. 2012) citing Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001). Melo has no evidence to support such a conclusion.

The City had no duty to seek a reasonable accommodation or engage in the interactive process where no reasonable accommodation existed.  When exploring a reasonable accommodation the employer does not have to create a new position. Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 454 (2002).  Officer Melo requested a reasonable accommodation meeting from the City on February 26, 2016 and again on April 4, 2016; well after the City had scheduled his hearing for termination, and discussed with his attorney putting him in for retirement.  When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be "too little, too late." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 260-62, n. 9 (1st Cir. 2001); see also *Rose v. Laskey*, 110 F. App'x 136, 138 (1st Cir. 2004) (per curiam) (finding that plaintiff's presentation of therapist's letter requesting leave of absence after plaintiff threatened supervisor with violence was "untimely" as well as  unreasonable); Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 796 & n.3 (1st Cir. 1992) (rejecting medical student's claim that school failed to reasonably accommodate his learning disability, in part because student never requested alternative testing method until he had failed exam three times and faced expulsion).

Furthermore, after Melo's attorney sent the initial letter, the City's attorney continued to work with Melo's attorney to determine whether he could be put in for accidental versus ordinary disability as reflected by email communications between counsel around that time

period. Furthermore, in these letters Melo failed to offer or suggest a reasonable accommodation that would allow him to perform the essential functions of his job, or show that he could perform the essential functions of his job with a reasonable accommodation. A request for permanent light-duty assignment, which is in effect what Melo's attorney requested, was not facially reasonable as it would have to involve him not performing essential functions of his job.  As testified to by the Chief at his deposition, this is not something the Department has any capacity before, and not something that can be done as light-duty is only available to officers temporarily who are coming back from medical leave.  The City had no duty to create a new position for Melo, or allow him to continue to work without being able to perform the essential functions of his job as a police officer.  Therefore, no reasonable accommodations existed for Melo.

For these reasons, the City did not violate any duty to accommodate Melo as the request was facially unreasonably (would have been permanent in nature and unable to allow him to perform the essential functions of his job on its face), there was no accommodation that would have been possible given his medical condition to allow him to perform the essential functions, and  Plaintiff cannot show otherwise. Therefore, Plaintiff has failed to show a prima facie case of disability discrimination and this claim against the City should be dismissed.

### iii. Plaintiff Cannot Show He Suffered Any Adverse Action by His Employer, City of Somerville Because of A Disability

An adverse employment action typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012). Plaintiff in this case has claimed a termination, or in the alternative an effective termination or a "constructive discharge." This term constructive

discharge ordinarily "refers to harassment so severe and oppressive that staying on the job while seeking redress—the rule save in exceptional cases—is intolerable." Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003). In order to prove such a claim, the Plaintiff has to show that working conditions were so difficult or unpleasant that a reasonable person in his shoes "would have felt compelled to resign." De La Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir. 2004) To show an "effective termination" or "constructive discharge" as Plaintiff has claimed, Plaintiff must show that at the time of the City's submission of his application for involuntary disability retirement, the City did not allow him the opportunity to make a free choice regarding his employment relationship.'" Torrech-Hernandez v. GE, 519 F.3d 41, 50 (1st Cir. 2008). The standard to assess this type of constructive discharge claim is objective and "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 28 (1st Cir. 2002).

Plaintiff has no facts to sustain any claims that he suffered an adverse employment action as a result of his disability. There is no evidence that Plaintiff was terminated, or any genuine issue of material fact that Plaintiff was constructively discharged from his employment with the City of Somerville. Rather, as the record clearly shows, Plaintiff was put in for involuntary retirement on accidental disability; a retirement that was decided by the Somerville Retirement Board (not his employer), with the approval of the State Retirement Board System- the Public Employee Retirement Administration Commission (PERAC). Plaintiff's counsel worked with the City in the months preceding the application to provide documentation that there were no other accidents between his original date of injury and the fall of 2015, to support the application for accidental disability. Plaintiff furthermore, at no time challenged the application for accidental disability once it was put in by the City- something he was informed at every stage he

had the right to do or the application would proceed forward. Rather, Plaintiff was happy with the decision to put him in for "accidental" and only when Plaintiff filed this case with the Massachusetts Commission Against Discrimination, was the City aware that he challenged the bases of the disability application.

The City admits that in January of 2017 it scheduled Plaintiff for a hearing to determine whether discipline up to and including termination was warranted for his violation of a Last Chance Agreement. This Agreement was voluntarily entered into between Melo and the City in October of 2015, in lieu of proceeding forward with a reasonable suspicion hearing on whether Melo's urine could be tested for the presence of marijuana. As part of the terms of this last chance agreement Melo, inter alia, was required to successfully complete a fitness for duty examination to take place on October 15, 2015 and to enter and complete a rehabilitation program for the treatment of marijuana abuse. This agreement was entered into in lieu of proceeding forward with a reasonable suspicion drug testing hearing where the results of Melo's urine test examination would be reviewed for the presence of marijuana, and he could be subjected to termination of his employment. In this Last Chance Agreement, Melo and the City signed and agreed that his failure to abide by the terms of it, will subject him to termination of employment, and that violation of the terms of the agreement required termination.

After the fitness for duty examination was completed, the City learned that Melo had failed the examination and given the terms of the Last Chance Agreement and the doctor's report scheduled him for a hearing to determine termination. Pursuant to the terms of the Last Chance Agreement Chief Fallon had requested Melo's employment be terminated. Therefore, Melo has no likelihood of showing any of these actions, scheduling him for a termination hearing were

because of any disability; rather they were for violation of the terms of the last chance agreement he signed.

The Somerville Retirement Board received an involuntary accidental disability application from Chief Fallon of the Somerville Police Department for Police Officer Carlos Melo on July 19, 2016. After the Chief's submission of documentation to the Retirement Board for involuntary accidental disability, he had no further involvement in the process. Melo likewise at no point challenged the involuntary disability application despite knowing very well his rights to do so and the right to a hearing. Plaintiff forewent all of his state law administrative rights and showed no willingness or concern to challenge the decision to put him in for involuntary accidental disability retirement, or the decision to approve it at any stage in the process. The Somerville Retirement Board, not the employer of Melo, made the decision to involuntarily retire him, and PERAC approved this decision.

Therefore, Melo has not shown, as claimed in his complaint he was subject to any termination or constructive discharge by his employer and has failed to prove a prima facie case of discrimination.

### iv. <u>Legitimate Non-Discriminatory Reasons for the City's Actions</u>

Assuming arguendo, Plaintiff presents sufficient evidence at the summary judgment stage to show a genuine dispute of material fact as to his prima facie case, the Plaintiff's claims must still fail because the City is able to articulate legitimate, non-discriminatory reasons for its employment decisions and has produced credible documented evidence to show the reasons for its actions were the real reasons and not pretext. See <u>Tobin v. Liberty Mut. Ins. Co</u>., 433 F. 3d 100, 105 (1st Cir. 2005) citing <u>McDonnell-Douglas</u>, 411 U.S. 792, 802 (1983).

Plaintiff's submission to a fitness for duty examination was something agreed to by Complainant himself and the Union he is a part of as a result of a Last Chance Agreement. Based on the terms of that Agreement any violation or failure to complete the terms would result in termination. The actions relative to what doctor to send him to and the tests to be performed, were in the complete purview of the Personnel Department who sent the information to the medical doctors and relied on their expertise in evaluating Melo. The suspension and scheduled hearing of the Complainant is directly related to the terms of Last Chance agreement only, and Complainant's failure to successfully complete a fitness for duty examination.

The City also put in the request for ordinary disability retirement on the grounds that it could not then link a 2002 injury to a failed fitness for duty in 2015 without more information from Melo's counsel. At the request of Melo's counsel, the termination hearing was postponed and Melo's attorney sought the City to put him in for an involuntary accidental disability retirement. Each and every action of the City as detailed in the statement of material facts and attached exhibits, is well documented. Starting with giving Melo the opportunity to sign a last change agreement rather than have his urine tested for the presence of marijuana back in 2015, the City has made every opportunity to treat Melo fairly.  Once the application was submitted for accidental disability retirement, the decision of whether to retire the Complainant was out of The City's hands and in the hands of the Retirement Board (a separate legal entity from the City).

Plaintiff has no evidence of discriminatory animus by the City in this matter, only conclusory allegations unsupported by facts. He has no likelihood of proving pretext in this case. Plaintiff had raised a claim of disparate treatment in his complaint- mainly that another officer in the Department was monocular (who he identified as Sergeant in his interrogatories)- and yet the Department promoted him and allowed him to remain employed. However, this Officer can see

out of both eyes, passed a pre-employment physical including the vision test, and has had no accidents or injuries affecting his vision since his employment with the City.

Therefore, Counts 1-6 of Plaintiff's claim should be dismissed accordingly.

### v.     Count VII: Intentional Infliction of emotional distress by defendants

The City of Somerville and Chief Fallon are entitled to judgment as a matter of law on Count 7.  Under Massachusetts law, a claim for Intentional Infliction of Emotional Distress (IIED) requires proof of the following elements: (1) that Defendant "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 468 Mass. 379 (2014). "Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* (quoting Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456 (Mass. 1997)) (quotation marks and citations omitted). The conduct at issue must go "beyond all possible bounds of decency, and [be] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Roman v. Trustees of Tufts College, 461 Mass. 707 (2012) (citation omitted).

Here, the Chief submitted an application for Melo's retirement due to his handicap which rendered him unfit for duty.  There is nothing extreme or outrageous about this employment actions here and his reasoning for each step along the way is explained fully when viewing the

documentation in the record. Melo was ordered to go for a fitness for duty, as this was one of the terms of the Last Chance Agreement he signed off on in October of 2015. His license to carry was suspended after the determination he unfit for duty and medical professional's report of concerns with safety given his monocular vision. Melo was scheduled for a termination hearing for failing to meet the terms of the last chance agreement. Given the email communications between counsel, and the evidence in the record Melo cannot prove any animus or motive on the part of the Chief in putting him in for ordinary versus accidental. Rather the City's decision to choose ordinary is well reflected in counsel's email communications with Melo's counsel and supports the Chief's testimony that this was based on his consulation with the City. Once any intervening factor was ruled out as having caused the current medical condition, the Chief put him in for involuntary accidental. At the request of Melo's counsel and after his retirement, the Chief at the advice of the City then rescinded the initial suspension given to Melo prior to the termination hearing in an effort to resolve all employment issues related to him since he was now retired.   Given the ample evidence in the record substantiating the legitimate basis the Chief had for each and every one of his actions, and given they are all normal personnel actions, the Plaintiff has no likelihood of showing "extreme and outrageous" conduct as required under the law.

Therefore Count 7 against Chief Fallon of the Complaint should be dismissed accordingly.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant summary judgment on all remaining counts of the Complaint.

Respectfully submitted,

**DEFENDANTS CITY OF SOMERVILLE and CHIEF DAVID FALLON**

By their attorneys
/ s/ *Shannon T. Phillips*
Shannon Phillips, BBO# 685450
Jason D. Grossfield, BBO# 666122
Assistant City Solicitors
Law Dept., City Hall
93 Highland Avenue
Somerville, MA 02143
(617) 625-6600, ext. 4400
jgrossfield@somervillema.gov
sphillips@somervillema.gov
law@somervillema.gov

Dated: January 28, 2019

## 7. 1 CERTIFICATION

I hereby certify that counsel for Defendants conferred with counsel for Plaintiffs on all matters contained in this motion and were unable to resolve any of the issues at hand prior to filing.

Dated:  January 28, 2019.         / s/ *Shannon T. Philips*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this document was served upon the attorney of record for each party via the Court's CM/ECF Electronic Case Filing System on January 28, 2019.

Dated:  January 28, 2019.         / s/ *Shannon T. Philips*