UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10786-RGS

CARLOS MELO

v.

CITY OF SOMERVILLE and CHIEF DAVID FALLON,
in his official and individual capacity

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

March 15, 2019

STEARNS, D.J.

Carlos Melo brought this lawsuit against his former employer, the City of Somerville, and his erstwhile supervisor, Chief David Fallon. Melo alleges that they discriminated against him based on his disability by failing to accommodate him and forcing him to retire. More specifically, the Complaint sets out one claim against Chief Fallon for intentional infliction of emotional distress (Count VII) and six claims against Somerville for failure to accommodate his actual (Count I) and perceived (Count II) disability under the Americans with Disabilities Act (ADA), for violating § 504 of the Rehabilitation Act (Count III), and for discrimination under Mass. Gen. Laws ch. 151B, § 4(16) based on his actual (Count IV), perceived (Count V),

and record of (Count VI) disability. Defendants now move for summary judgment on all counts. For the reasons to be explained, defendants' motion for summary judgment will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to Melo as the nonmoving party, are as follows. In May of 1997, Melo began working as a police officer for Somerville. In October of 2002, he injured his left eye while on duty. In 2003, after multiple surgeries, he returned to work without restrictions.[1] In 2007, he became a station officer, which required him to, among other responsibilities, answer police calls, run criminal history checks, and monitor prisoners. He was still required to be able to perform the essential duties of a police officer.

By August of 2015, Melo had twice tested positive for marijuana. After entering into a rehabilitation agreement on the first occasion and after being disciplined on the second, he was informed that a third positive test would

---

[1] Melo maintains that in 2003 he told multiple coworkers that he had lost vision in his left eye. Stmt of Facts (SOF) (Dkt # 21) ¶ 69. Defendants, however, contend that they were not made aware of any permanent vision loss until 2015. See SOF (Dkt # 16), Ex. G (providing Melo's three doctors' notes from 2002 and 2003, which did not mention any work restrictions).

result in termination.[2]  On August 25, 2015, Lieutenant William Rymill reported to Deputy Chief Stephen Carrabino that Melo had arrived at work smelling of marijuana.  On September 22, 2015, Captain Michael Cabral spoke with Melo about the report.  Melo informed Captain Cabral that he had "lost partial vision in his [left] eye" and that, as a result, he sometimes smoked marijuana to relieve his migraines and pain.[3]  SOF (Dkt # 16), Ex. I.

The following day, Somerville ordered Melo to undergo a drug test and placed him on paid administrative leave pending the results.  After Melo disputed Somerville's "reasonable suspicion" for ordering the drug test, *id.*, Ex. E., Somerville agreed to hold an appeal hearing on October 1, 2015.  That morning, instead of participating in the hearing, Melo entered into an agreement with Somerville, requiring him to, among other things, complete a drug rehabilitation program and pass a fitness for duty test.[4]  The

---

[2] The rehabilitation agreement specifically provided that by testing positive the first time, Melo agreed to "enter a rehabilitation program . . . in lieu of discipline," but if he tested positive a second time, he would be disciplined, and if he tested positive a third time, he would be terminated. SOF (Dkt # 16), Ex. M ¶ 3.  Another provision, however, stated that a third positive drug test "*may* result in termination."  *Id.* ¶ 10 (emphasis added).

[3] Melo also noted that he could lawfully smoke medical marijuana and maintained that he "never reported for duty high."  SOF (Dkt # 16), Ex. I.

[4] On October 2, 2015, Melo formally signed the "Settlement and Last Chance Agreement and Release of All Claims."  SOF (Dkt # 16), Ex. P.

3

agreement also provided that failure to abide by its terms would result in termination.

On October 15, 2015, Dr. Albert Rielly performed an examination and instructed that Melo follow up with an ophthalmologist. On December 3, 2015, Dr. Steven Patalano performed an eye examination and opined that Melo could "see nothing" from his "aphakic" left eye. SOF (Dkt # 16), Ex. H. After reviewing Dr. Patalano's report, Dr. Rielly concluded that because Melo essentially has monocular vision, he was unable to perform the essential functions of a police officer, especially "pursuit driving," and was therefore unfit for duty. SOF (Dkt # 21), Ex. CC. Chief Fallon agreed, and Somerville decided to terminate Melo. In lieu of termination, Melo ultimately agreed to involuntary accidental disability retirement.[5] On March 1, 2017, the Public Employee Retirement Administration Commission (PERAC) officially approved his retirement.

On October 23, 2017, Melo filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC). Compl. (Dkt # 1) ¶¶ 4-5. Melo then withdrew the charge and initiated this lawsuit on April 23, 2018.

---

[5] Melo contends that he did not agree to retirement, but was coerced and threatened into it. SOF (Dkt # 22) ¶ 105.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted).

### *Disability Discrimination*

To make out a prima facie case of disability discrimination under the ADA, Chapter 151B,[6] and § 504 of the Rehabilitation Act,[7] Melo must show

---

[6] Because Chapter 151B "tracks the ADA in virtually all respects," *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 20 n.5 (1st Cir. 2002), Massachusetts courts look to federal law for guidance, *see Tate v. Dep't of Mental Health*, 419 Mass. 356, 361 (1995) ("In construing the Commonwealth's employment discrimination statute, we have looked to the considerable case law applying the analogous Federal statute for guidance.").

[7] Because "[t]he same standards . . . apply to claims under the ADA and under the Rehabilitation Act," *Calero-Cerezo v. United States*, 355 F.3d 6, 11 n.1 (1st Cir. 2004), "Section 504 of the Rehabilitation Act 'is interpreted

5

that: (1) he has a disability within the meaning of the law; (2) he is nonetheless able to perform the essential functions of his job, with or without reasonable accommodation; (3) he suffered an adverse employment action; and (4) his employer replaced him with a non-disabled person or otherwise sought to fill the job. *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996); *Dartt v. Browning-Ferris Indus., Inc.*, 427 Mass. 1, 3 (1998). Somerville concedes that Melo has a disability (monocular vision),[8] but maintains that he was not qualified to perform the essential functions of his job as a police officer. I agree.

Melo bears the burden of showing that he is able to perform all essential, as opposed to marginal, functions of the job. *Kvorjak v. Maine*, 259 F.3d 48, 55 (1st Cir. 2001). In assessing whether a function is essential, the court may look to the employer's judgment, written job descriptions, and the experience of past and present incumbents in the same or similar jobs. *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006). The court generally affords "substantial weight" to an employer's determination that a

---

substantially identically to the ADA.'" *E.E.O.C. v. Amego, Inc.*, 110 F.3d 135, 143 (1st Cir. 1997) (citation omitted).

[8] The Supreme Court has held that individuals (like Melo) who have monocular vision "'ordinarily' will meet the [ADA's] definition of disability." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999) (citation omitted).

job requirement is essential. *Ward v. Massachusetts Health Research Inst., Inc.*, 209 F.3d 29, 34 (1st Cir. 2000).

One case that is instructive and on point is *Carleton v. Commonwealth*, 447 Mass. 791 (2006). In *Carleton*, the Supreme Judicial Court (SJC) held that the plaintiff, a candidate for a municipal firefighter's position, had "no reasonable expectation of proving that he [was] a qualified handicapped person" because he was unable to satisfy the hearing standard promulgated by the Commonwealth's Human Resources Division (HRD). *Id.* at 810. The SJC did not review the HRD's determination that a hearing aid was an unreasonable accommodation because it involved "an area where public safety [was] paramount" and was "based on consultations with medical and occupational experts in the field; [was] not the product of prejudice, stereotypes, or unfounded fear; and [was] ratified by the Legislature." *Id.* at 809-810.

In this case, the HRD has similarly set minimum vision standards for police officers and identified the job's essential functions. A police officer is considered unfit for duty if, as relevant here, he has "[u]ncorrected distance vision worse than 20/100 *in either eye*" or has "[p]eripheral vision of less than 70 degrees temporally and 45 degrees nasally *in either eye.*" SOF (Dkt # 16), Ex. C at 8 (emphasis added). Melo did not satisfy this test because, as

Dr. Patalano opined, he could "see nothing" out of his left eye.[9] Dr. Rielly, in turn, determined that Melo's monocular vision hindered his ability to operate a vehicle at high speeds, an essential function.[10] Dr. Rielly was also concerned that Melo's limited vision would interfere with his "ability to identify hazards, persons, evidence, vehicles, license numbers and weapons,"

---

[9] Melo argues that he meets the visual requirements because he has 20/25 vision in his right eye, see SOF (Dkt # 16), Ex. H, and, based on Dr. Rielly's initial report, "[t]he uncorrected vision standard of 20/40 needs to be obtained only with both eyes open, not each eye individually," SOF (Dkt # 21), Ex. Z. However, even assuming Melo could satisfy that threshold, Dr. Rielly went on to explain that "Massachusetts has established minimum visual requirements for police officer applicants, including minimum uncorrected vision," which, as noted above, Melo cannot satisfy.

[10] Melo contends that pursuit driving is not an essential function because it is not one of a patrol officer's "Duties and Responsibilities." SOF (Dkt # 21), Ex. AA. But the HRD's list of "Municipal Police Officer Essential Functions" twice includes "[o]perat[ing] a Department vehicle at a high rate of speed," specifically as an essential function of "Patrol and Incident Response" and "Arrest-Related Activities." SOF (Dkt # 16), Ex. C at 32-34.

Melo further contends that pursuit driving is not an essential function because he has satisfactorily performed his duties since 2003 without having to engage in it. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1043 (6th Cir. 2014) (holding that "[t]he district court . . . erred in prematurely deciding whether driving an apparatus during an emergency was an 'essential' function of a Stow firefighter because the evidence creates a genuine dispute about that fact"). While Melo may not have had to operate a vehicle at high speeds, the HRD's determination that it is an essential function of the job is entitled to considerable deference, *Amego*, 110 F.3d at 144, especially in that public safety is involved, *Carleton*, 447 Mass. at 809. *See also Cox v. New England Tel. & Tel. Co.*, 414 Mass. 375, 386-387 (1993) (affirming that even though a function "'may rarely occur . . . [i]t is not unforeseeable that this skill would be necessary during an emergency, or even from time to time'").

and that if Melo's right eye were temporarily comprised, he would effectively be blind. SOF (Dkt # 21), Ex. CC. All three independent medical reports prepared for the Somerville Retirement Board, which unanimously voted to approve Melo's involuntary accidental disability application for retirement, similarly determined that Melo was permanently unable to perform the essential functions of his position, albeit for different reasons.[11] In short, Melo fails to make a prima facie showing that he is otherwise qualified to be a police officer because his monocular vision renders him incapable of performing the essential functions of the job.[12]

---

[11] Dr. Lawrence Weene concluded that Melo was unfit because "[h]e would be considered a danger to himself and to others based on his limited vision." SOF (Dkt # 16), Ex. S. Dr. Seth Schonwald opined that Melo was unfit because, among other things, his monocular vision interfered with his depth perception and peripheral vision. Dr. Ernest Sutcliffe, however, did not have any "visual concerns," but determined that Melo was unfit because of "his use of marijuana for control of his migraine headaches." *Id.*

[12] Melo additionally argues that Somerville's failure to conduct an individualized assessment of his monocular vision amounts to discrimination. *See Kapche v. City of San Antonio*, 304 F.3d 493, 500 (5th Cir. 2002) (holding that the police department needed to individually assess whether the plaintiff, who suffers from insulin-treated diabetes, was able to perform the essential functions of a police officer); *Jeremy Nathan*, EEOC Decision No. 0720070014, 2013 WL 3965241, at *10 (July 19, 2013) (finding that the Federal Bureau of Investigation failed to perform an individualized assessment of whether the plaintiff, who suffers from monocular vision, could safely perform the essential functions of a Special Agent). But here, although Melo never underwent "formal field testing" as Dr. Rielly suggested, Opp'n (Dkt # 21), Ex. Z, to determine if he could operate a vehicle at high speeds, Dr. Rielly examined him and concluded that his monocular

***Failure to Accommodate***

To prevail on a failure to accommodate claim, Melo must show that: (1) he was disabled; (2) with or without reasonable accommodation, he was able to perform the essential functions of his job; and (3) his employer, despite knowing of his disability, failed to reasonably accommodate him. *Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003). An employer's duty to accommodate is triggered by a request from an employee. *Reed v. Lepage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001); *Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 644 (2004).

Melo argues that Somerville failed to engage in an interactive dialogue after he requested a reasonable accommodation for his disability. Somerville concedes that Melo requested an accommodation,[13] but asserts again that Melo is not qualified and that no reasonable accommodation existed. Chief Fallon testified that Melo's request of permanent "light duty" would not meet

---

vision made him incapable of doing so. Three doctors later agreed that Melo could not perform the essential functions of a police officer.

[13] On February 25, 2016, Melo's attorney specifically requested a meeting "to determine whether a reasonable accommodation [was] available . . . in the form of a light duty assignment or otherwise." Compl. (Dkt # 1), Ex. 8. On April 4, 2016, Melo's attorney followed up to reiterate the request for a reasonable accommodation. *Id.*, Ex. 9.

the essential functions of a police officer and that such a position is only available to officers temporarily when returning from medical leave.[14]

"It is well settled that an employer need not accommodate a disability by foregoing an 'essential function' of the employment position." *Laurin v. Providence Hosp.*, 150 F.3d 52, 56 (1st Cir. 1998). An employer is also "'not required to find another job for an employee who is not qualified for the job he or she was doing.'" *Aug. v. Offices Unlimited, Inc.*, 981 F.2d 576, 581 n.4 (1st Cir. 1992), quoting *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n.19 (1987); *see also Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 454 (2002) (noting that an employer is "under no obligation to create a new position" for an employee). Having already concluded that Melo was not qualified to be a police officer, the court finds that Melo's failure to

---

[14] Melo avers that his use of medical marijuana is a reasonable accommodation. *See Barbuto v. Advantage Sales & Mktg., LLC*, 477 Mass. 456, 467 (2017) (holding "that an employee's use of medical marijuana under [the] circumstances [was] not facially unreasonable as an accommodation for her handicap"). This averment fails for a few reasons. First, Melo never requested such an accommodation. *See Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007) ("[T]he plaintiff has the burden of showing that she 'sufficiently requested the accommodation in question.'") (citation omitted). Second, although Dr. Sutcliffe disagreed, Dr. Rielly and two other doctors determined that Melo could not perform the essential functions of a police officer because of his monocular vision, not because of his marijuana use. Third, medical marijuana would not remedy Melo's eyesight, only his chronic pain. Thus, even with marijuana, he would be unable to engage in pursuit driving, an essential function.

accommodate claim must also be dismissed because he is unable to show that with a reasonable accommodation, he could perform the essential duties of the job. *See Calef v. Gillette Co.*, 322 F.3d 75, 86 n.8 (1st Cir. 2003) ("If the plaintiff, with or without reasonable accommodation, cannot perform an essential function of the job, then he is not a qualified individual and there is no duty to accommodate.").

### ***Intentional Infliction of Emotional Distress***

Under Massachusetts law, Melo is required to demonstrate: (1) that Chief Fallon "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Polay v. McMahon*, 468 Mass. 379, 385 (2014). "The standard for making a claim of intentional infliction of emotional distress is very high[.]" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996). The disputed conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roman v. Trs. of Tufts Coll.*, 461 Mass. 707, 718 (2012) (citations omitted). Melo fails to address this exacting standard in his Opposition and offers no evidence that Chief Fallon's conduct was beyond the pale.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>.  The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE